NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, Appellant,

v.

Howard ADAMS, Jr., Appellee.

No. 89–CA–2392–MR.

Court of Appeals of Kentucky.

March 1, 1991.

Case Ordered Published by Court of Appeals April 19, 1991.

Discretionary Review Denied by Supreme Court Aug. 21, 1991.

<hr>

S. Bradford Smock, Frankfort, for appellant.

Darrell Hall, Whitesburg, for appellee.

Before GUDGEL, HOWARD and McDONALD, JJ.

McDONALD, Judge.

This is an appeal of the Knott Circuit Court's reversal of an order of the Natural Resources and Environmental Protection Cabinet (cabinet).

The circuit court determined that the cabinet's order was not supported by substantial evidence and that the activities of appellee, Howard Adams, Jr., did not fall within the definition of "surface coal mining operations" under KRS 350.010(1), (2).

The cabinet's order adopted the hearing officer's report and findings which portrayed the following circumstances:

This action is an Appeal from a preliminary determination that Adams had violated KRS 350.060, by mining without a permit. Adams was discovered on an unpermitted site drilling holes for explosives, utilizing a Gardner–Denver drill. Mr. Johnny Terrell of the Cabinet, who was accompanied by Mr. Taylor Little, and Kenneth Jones, discovered Mr. Adams on the unpermitted area on Sunday afternoon, September 8, 1985. There was other mining equipment on the site (two [2] dozers and a loader), but no other persons were there. Mr. Terrell testified that Adams admitted ownership of the drill and the pick up truck, but would give no further information about the ownership of the other mining equipment or for whom he was working at the time.

Mr. Terrell stated that he had checked to see if the area was permitted and found that it was not. There were no exploration permits applicable to the site. On July 26, 27, and 28, 1985, Mr. Terrell had inspected the site and noticed the overburden had been removed and the coal seam exposed. A road had been cut from an old permitted road to the subject site. On September 8, 1985, Adams was discovered, but no coal had been removed and Mr. Terrell did not cite Mr. Adams for any violations of the statutes or regulations at that time. However, on September 24, 1985, Mr. Terrell, accompanied by Mr. Taylor Little and Mr. Roger Martin visited the site and found a pit in the area where Adams' drill had been operating on September 8, 1985, and approximately one thousand (1,000) to fifteen hundred (1,500) tons of coal had been removed, said estimate being based on the size of the pit.

Adams testified that he had been contacted by a Mr. Harry Combs. Mr. Combs contacted Adams by phone and had a personal contact with him at a service station. Mr. Combs allegedly requested that Adams drill holes for explo-

sives as a part of the removal of coal. Adams stated that Mr. Combs assured him that "everything was taken care of".

Jeff Howard, Principal Reclamation Inspector in the Jackson Regional Office testified that he issued Cessation Order No. 030857 to Adams for his failure to complete the remedial measures outlined in Non–Compliance No. 080189. Mr. Howard further testified that the site remained unreclaimed, and there was no equipment on the site during his inspections of June and July of 1986.

The cabinet's order imposed a $10,000 penalty on Adams for mining without a permit. Pursuant to KRS 350.032, he appealed to the circuit court for judicial review.

The circuit court, solely from the record compiled before the cabinet, made independent findings of fact which led to the entry of a judgment setting aside the cabinet's order.

The circuit court's review under KRS 350.032(2) is a limited review. The findings of the cabinet which are supported by substantial evidence are conclusive.

We have reviewed the cabinet's findings in light of the statutory direction and conclude that they were supported by substantial evidence. Therefore, the circuit court was without authority to set aside the cabinet's order.

The cabinet's findings primarily determined that Adams was seen operating a drill upon the unpermitted site and estimated that as much as 2700 tons of coal had been removed therefrom. It was observed that coal was exposed by removal of the overburden. The road to the site was obstructed by a boulder and later a cable across the road. The coal was stockpiled after being mined. On the site Adams was seen operating the drill to facilitate the placement of explosives. Other strip mining equipment was present such as a loader and bulldozer; however, their affixed serial numbers were defaced. When asked by the inspectors, Adams refused to say for whom he was working. *See Natural Resources and Environmental Protection Cabinet v. Mic–Bar, Inc.*, Ky.App., 765 S.W.2d 585 (1989), for support of the cabinet's actions. Admittedly, much of the evidence was circumstantial in nature, but that does not depreciate its value nor the foundation upon which to support the cabinet's conclusions.

Because there was substantial evidence to support the cabinet's order, the circuit court was without authority to make independent findings of fact. The circuit court seemed to think that Adams had to be caught "redhanded" removing the coal, but we do not believe the cabinet had that strict a burden.

■ The second argument is that the circuit court erred in concluding that Adams' activities did not fall under the definition of "surface coal mining operations."

The trial court reasoned:

... KRS 350.010(1), defines "Surface coal mining operations" as being activities conducted on the surface of lands in connection with a surface coal mine and surface impacts incident to an underground coal mine. The statute goes on to state that such activities include excavation for the purpose of obtaining coal including such common methods as contour, strip, auger, extended depth secondary recovery systems, mountaintop removal, box cut, open pit, and area mining, the use of explosives and blasting, and in situ distillation or retorting, leaching or other chemical or physical processing, and cleaning, concentrating or other processing or preparation, and the loading of coal at or near the mine site. The statute goes on to state that such activities shall not include ... "The extraction of, or intent to extract, two hundred fifty (250) tons or less of coal by any person by surface coal mining operations within twelve (12) successive calendar months".

Surface coal mining operations include strip mining by statute as the two operations are described in KRS 350.010 (as amended by 1984 Ky. Acts Chapter 145, § 5).

Surface coal mining is:

[A]ctivities conducted on the surface of lands in connection with a surface coal mine and surface impacts incident to an underground coal mine.... Surface coal mining operations shall also include the areas upon which such activities occur or where such activities disturb the natural land surface. Such areas shall also include any adjacent land the use of which is incidental to any such activities, all lands affected by the construction of new roads or the improvement or use of existing roads to gain access to the site of such activities and for haulage, and excavations, workings, impoundments, dams, ventilation shafts, entryways, refuse banks, dumps, stockpiles, overburden piles, spoil banks, culm banks, tailings, holes or depressions.... This definition includes the terms "strip mining" of coal....

KRS 350.010(1).

Strip mining is:

[T]he breaking of the surface soil in order to facilitate or accomplish the extraction or removal of minerals, ores, or other solid matter; any activity or process constituting all or part of a process for the extraction or removal of minerals, ores, and other solid matter from its original location....

KRS 350.010(2).

It is our conclusion that the facts relied upon by the cabinet and found in its order fit within the definition of surface coal mining operations. The circuit court was in error to conclude otherwise.

For the reasons stated, the Knott Circuit Court is reversed and is directed to enter an order affirming the order of the Natural Resources and Environmental Protection Cabinet.

All concur.